# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

ROBERT BOYD,

                  Petitioner,     :            Case No. 1:25-cv-00455

    - vs -                         District Judge Jeffery P. Hopkins
                                    Magistrate Judge Michael R. Merz

WARDEN, Madison Correctional
  Institution,

                                 :
            Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case, brought *pro se* by Petitioner Robert Boyd to obtain relief from his conviction in the Court of Common Pleas of Mahoning County. The case is before the Court for consideration of the merits on the Petition (ECF No. 2), the State Court Record (ECF No. 20), the Respondent's Return of Writ (ECF No. 21) and Petitioner's Reply (ECF No. 28).

**Litigation History**

Petitioner was indicted on two counts of rape in violation of Ohio Revised Code § 2907.02(A)(2),(B); one count of gross sexual imposition in violation of Ohio Revised Code § 2907.05(A)(1),(C); three counts of disseminating material harmful to juveniles in violation of Ohio Revised Code § 2907.31(A)(1),(F); and nine counts of illegal use of a minor in nudity-oriented

1

material in violation of Ohio Revised Code § 2907.323(A)(3),(B)(Superseding Indictment, State Court Record, ECF No. 20, Ex. 8, PageID 211). A jury convicted Petitioner on all counts except Count 4 and he was sentenced to be imprisoned for 24.5 years. He timely appealed to the Ohio Seventh District Court of Appeals which affirmed. *State v. Boyd*, 198 N.E.3d 514 (Sept. 30, 2022). The Ohio Supreme Court granted Petitioner leave to file a delayed notice of appeal, but then declined to exercise jurisdiction. *State v. Boyd*, 170 Ohio St. 3d 1480 (2023). Petitioner's petitions for post-conviction relief under Ohio Revised Code § 2953.21, for reconsideration in the Court of Appeals, to re-open the appeal, and for habeas corpus relief in the Ohio courts were all unsuccessful.

Boyd's Petition was docketed in this Court on July 2, 2025. He pleads the following grounds for relief:

> **Ground One:** The decision of the Ohio judiciary denying the Petitioner relief upon his clam of violation of his right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution were in error, as the evidence did not rise to the level beyond a reasonable doubt.
>
> **Ground Two:** The search on the Petitioners Instagram, Facebook, Snapchat, and KIK accounts exceeded probable cause and lacked any nexus to messages received and accounts searched, violated the Fourth, Fifth, and Fourteenth Amendments to the US Constitution.
>
> **Ground Three:** The search on Petitioners homes and electronics lacked probable cause and violated the Fourth, Fifth, and Fourteenth Amendments to the US Constitution.
>
> **Ground Four:** Does the prejudicial joiner of offenses, testimony which may inflame the jury, violate the XIV amendment to the US Constitution?
>
> **Ground Five:** Appellant was denied a Speedy Trial in Violation of U.S. Const. amend. X, XI and XIV.

> **Ground Six:** Defendant was denied a fair trial due to Prosecutorial misconduct, which violated defendant's 5th Amendment Due process rights.
>
> **Ground Seven:** The failure of Petitioners trial counsel denied him his right to the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution.
>
> **Ground Eight:** The state violated the 5th Amendment by putting Petitioner on trial using facts different than was presented to the grand jury and testimony should be provided to the defense.
>
> **Ground Nine:** A Mahoning County Judge violated Petitioners Fifth and Fourteenth Amendment by executing a search warrant in California, outside of their jurisdiction.

(Petition, ECF No. 2).

# Analysis

### Fourth Amendment Claims

In Grounds for Relief Two and Three, Petitioner asserts he was convicted on the basis of evidence obtained in violation of his rights under the Fourth Amendment[1].  Federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts.  *Stone v. Powell,* 428 U.S. 465 (1976).  *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does.  The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of a procedural rule prevents state court consideration of merits.  *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982).  The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

---

[1] Petitioner mentions the Fifth Amendment in his Petition but does not rely on any argument that he was coerced to incriminate himself.  The Court treats reference to the Fifth Amendment as surplusage.

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id*. at 526.

In *Good v. Berghuis*, 729 F.3d 636 (6th Cir. 2013), the Sixth Circuit held an evidentiary hearing was not required by due process and followed its prior conclusion that "opportunity means opportunity . . . the state court need do no more than 'take cognizance of the constitutional claim and render a decision in light thereof." *Id.* at 638, *quoting Moore v. Cowan*, 560 F.2d 1298, 1302 (6th Cir. 1977).

> Consistent with *Moore* and with two of the three votes in *Bradley*, we make clear that the *Powell* "opportunity for full and fair consideration" means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim.

*Id.* at 639-40.

The State Court Record shows Petitioner used Ohio's motion to suppress mechanism to raise his Fourth Amendment claims and then appealed from denial of that motion. The Seventh District considered that appeal on the merits and found no Fourth Amendment violation. Consideration of Petitioner's Fourth Amendment claims in habeas corpus is therefore barred by *Stone*. Because *Stone* precludes merits consideration of Grounds Two and Three, the Court need not adjudicate Respondent's procedural default defense to Grounds Two and Three.

4

Grounds for Relief Two and Three should be dismissed because merits review s barred by *Stone*.

**Procedural Default**

Respondent pleads a defense of procedural default as follows:

> The Warden argues that Boyd's grounds for relief are defaulted as follows: Ground 1- partially defaulted as to counts 2 and 3, Ground 2 -partially defaulted as to a challenge to social media search warrants other than Instagram, Ground 4- entirely defaulted, Ground 5- entirely defaulted, Ground 6- entirely defaulted, Ground 7 – partially defaulted, Ground 8-entirely defaulted, Ground 9-entirely defaulted.

(Return, ECF No. 21, PageID 2535).

Petitioner first responds to the assertion of procedural default as if it were a failure to exhaust defense (Reply, ECF No. 28, PageID 2640-41). But procedural default is not the same thing as failure to exhaust. When the State asserts failure to exhaust, it is essentially saying that there remains one or more possible state remedies that must be exhausted – tried by a petitioner – before he or she can invoke habeas corpus. A procedural default defense asserts that there was a remedy which a petition could have tried but didn't and no longer can because of some state procedural bar. An example would be an issue which could have been raised on direct appeal but was not and the time for appeal has now run. Respondent here does not assert Petitioner has any remaining state court remedies which he could now exhaust.

Petitioner then turns to asserting his actual innocence (Reply, ECF No. 21, PageID 2641-43). In doing so, he recites what he believes the existing evidence in state court shows[2]. Although

---

[2] In these three pages of argument, Petitioner repeatedly references facts which supposedly are supported by the record, yet never once includes a citation to that place in the record where the evidence supposedly appears. This violates that portion of the Order for Answer which provides "When the record is filed electronically, the Court's CM/ECF filing system will affix a unique PageID number to each page of the record, displayed in the upper right-hand corner

he cites *Schlup v. Delo*, 513 U.S. 298 (1995), which is the foundational precedent for the actual

innocence exception to procedural default, he has not actually produced any new evidence of the

sort required by *Schlup*. The controlling precedent on this point is now the Supreme Court's

decision in *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U.S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U.S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.
>
> * * *
>
> [A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013).

Petitioner has submitted no new reliable evidence of the sort required by *Schlup* to

established actual innocence.

**Insufficiency of the Evidence**

---

of the page. **All papers filed in the case thereafter by either party shall include record references to the PageID number.**" (Order, ECF No. 5, PageID 144, emphasis supplied.)

In his First Ground for Relief Petitioner asserts he was convicted on insufficient evidence. An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most

> favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  When reviewing a claim for sufficient evidence, a federal habeas court must apply a twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

8

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Petitioner raised lack of sufficient evidence as his second assignment of error on direct appeal and the Seventh District decided it as follows:

{¶49} Appellant's second assignment of error contends:

"APPELLANT'S CONVICTIONS WERE UNSUPPORTED BY SUFFICIENT EVIDENCE."

{¶50} Whether the evidence is legally sufficient to sustain a conviction is a question of law dealing with adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). An evaluation of witness credibility is not involved in a sufficiency review, as the question is whether the evidence is sufficient if taken as true. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79, 82; *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). In other words, sufficiency involves the state's burden of production rather than its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390, 678 N.E.2d 541 (Cook, J., concurring).

{¶51} In reviewing the sufficiency of the evidence, the court views the evidence in the light most favorable to the prosecution to ascertain whether a rational juror could have found the elements of the offense proven beyond a reasonable doubt. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). *See also State v. Filiaggi*, 86 Ohio St.3d 230, 247, 714 N.E.2d 867 (1999) (reasonable inferences are also viewed in favor of the state); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (all of the evidence is to be considered in the light most favorable to the prosecution, including reasonable inferences). The question is merely whether "any" rational trier of fact could have found the contested elements were adequately established. *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998), quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781.

{¶52} First, Appellant challenges the sufficiency of the evidence to support count one, the rape of victim A. The elements of this offense are purposefully compelling another to submit to sexual conduct by

force or threat of force. R.C. 2907.02(A)(2) (who is not the spouse). Appellant points out the age of sexual consent is 16 in Ohio, and victim A was 17 years old. Appellant contends there was not sufficient evidence of force or threat of force by emphasizing the following: the victim's acknowledgement he initially consented to anal sex; the lack of testimony on fear or threat; and the victim's testimony he did not try very hard to throw Appellant off him. The state points out rape can occur after consent is withdrawn and urges the victim testified to force.

{¶53} Victim A testified he communicated with Appellant after seeing his online photograph with a Lamborghini, which the victim believed belonged to Appellant. (Tr. 3131, 318). The victim testified he had a girlfriend but was curious. (Tr. 317). They talked about sex. On March 31, 2017, they decided to meet for a sexual encounter. (Tr. 318, 341). Appellant retrieved the victim from Lisbon and brought him to Taco Bell and then to his house which was still under construction from the fire. Before arriving at the house, the victim expressed he was starting to feel on edge and did not feel right about going. (Tr. 323). However, the victim "went along with it" and was thereafter initially accepting of trying the sexual encounter. (Tr. 360). The victim noticed security cameras around Appellant's house, which appeared to be recording. (Tr. 324).

{¶54} They went into the bedroom where Appellant laid him down and removed his pants. (Tr. 325). The victim was then bent over with his knees on the floor and his chest and stomach on the bed. (Tr. 345). Appellant began performing anal sex on the victim. Within five to ten seconds, the victim withdrew his consent. (Tr. 328, 344, 360). The victim testified, "I didn't like it at all; so I asked him to stop." (Tr. 326). He further testified: "it hurt * * * I just kept telling him don't. * * * I told him no, but he kept going anyway." (Tr. 327-328).

{¶55} When asked if Appellant physically restrained him, the victim said Appellant's arms were on his hands and arms, which were spread out. The victim noted, "I didn't try my hardest to get him off." (Tr. 328). When asked what he meant, the victim said, "I mean if I tried my hardest to -- to get away, I just would have fully got up, threw him off me and left." He further explained, "I must have been in a state of shock." (Tr. 357-358).

{¶56} After five to ten minutes, Appellant ejaculated inside of the victim. (Tr. 328-329). When Appellant removed himself from the victim, the victim asked to go home. (Tr. 328). He noted he wished to exit the car as soon as he recognized where he was. (Tr. 329). He

said Appellant told him not to tell anyone. (Tr. 330). He did not communicate with Appellant again. (Tr. 330). The victim said he tried to push the event out of his head and did not tell anyone about what happened until the police arrived at his door six weeks later to investigate Appellant (after the Instagram warrant). (Tr. 331-332). The victim said his drinking accelerated after the incident and he became an alcoholic. (Tr. 357).

{¶57} Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). When evaluating force in the context of rape, relevant considerations may involve the age, size, strength, and relationship of the parties. *State v. Eskridge*, 38 Ohio St.3d 56, 58, 526 N.E.2d 304 (1988). When defense counsel asked about a shirtless photograph sent to Appellant, the victim said he worked out. (Tr. 337). The nurse practitioner who saw the victim six weeks after the incident testified he was 5'7" and 141 pounds. (Tr. 370). The victim was 17 years old while Appellant was 46 years old. The incident occurred in Appellant's house, and the victim was driven there by Appellant.

{¶58} The past and immediate history of consent may be relevant. *Eskridge*, 38 Ohio St.3d at 59, 526 N.E.2d 304. However, forcible rape is not foreclosed by the fact an encounter began as consensual. In a case cited by the state, the Second District observed:

> Evidence of consent * * * is not a static concept, though. Rape can be established when the two participants start the encounter on a consensual basis, "but the consent is revoked by words, actions or conduct that clearly communicates non-consent, the defendant fails to respect the change in consent, and purposely proceeds to engage in sexual conduct through force or threat of force evidenced by violence, physical restraint, or some type of coercive or threatening conduct that creates a belief or fear that physical force will be used if the victim does not consent."

*State v. Freeman*, 2d Dist. Greene No. 2020-CA-33, 2021-Ohio-734, 2021 WL 943694, ¶ 42.

{¶59} The victim may have initially consented to the sexual encounter but within seconds, he felt pain and asked Appellant to stop. Despite his repeated requests for Appellant to stop, Appellant continued imposing anal sex upon the juvenile victim while pressing the victim's hands and arms into the bed as the victim was face down with his legs over the edge of the bed.

11

{¶60} Notably, the rape statute specifically states: "A victim need not prove physical resistance to the offender in prosecutions under this section." R.C. 2907.02(C). A rational juror could find Appellant engaged in purposeful conduct which satisfied the definition of force, which merely requires "any" compulsion or constraint physically exerted by "any" means. R.C. 2901.01(A)(1).

{¶61} Next, Appellant contends there was insufficient evidence to support counts five and six, the misdemeanor counts of disseminating matter harmful to juveniles. (Appellant was acquitted of the count four disseminating charge.) The pertinent statutory division states: "No person with knowledge of its character or content, shall recklessly do any of the following: (1) Directly sell, deliver, furnish, disseminate, provide, exhibit, rent, or present to a juvenile * * * any material or performance that is obscene or harmful to juveniles * * *." R.C. 2907.31(A)(1),(F) (first-degree misdemeanor if the material is harmful; felony if the material is obscene). The state agrees the mental state of recklessness also applies to the recipient's status as a juvenile.

{¶62} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." *Id.* This "likely" mental state for recklessness merely involves "good reason for expectation or belief" (and is easier to show than the higher "probably" mental state). *State v. Young*, 8th Dist. Cuyahoga No. 85224, 2005-Ohio-3584, 2005 WL 1653586, ¶ 17, citing Staff Note to R.C. 2901.22(C).

{¶63} The indictment alleged these counts occurred on or about March 14, 2017. The investigating officer testified that after seizing Appellant's cell phone while executing the search warrant at the residence in May 2017, he discovered Appellant texted photographs of his penis to a juvenile. (Tr. 590). The officer testified these photographs were sent in March of 2017 (and said he could look at the printout of the text history to check the day of the month). (Tr. 556-557). When the police confronted Appellant about the texted photographs, Appellant voiced his mistaken belief it was legal because the minor was 16 (apparently assuming the law on sexual conduct applied to disseminating). (Tr. 573).

{¶64} Victim C testified he was 16 years old when he responded to Appellant's Craigslist advertisement, which was captioned to suggest Appellant was looking for a homosexual encounter. They originally used both email and texts, exchanging photographs of their genitals and making plans to meet. (Tr. 389-393, 399-402, 408). While testifying, the juvenile recipient reviewed the recovered March 2017 texts sent to him by Appellant and identified two photographs of Appellant's penis and two photographs of Appellant's shirtless torso. (Tr. 394, 400-402); (St.Ex. 15-18).

{¶65} While viewing the printout of recovered texts, victim C also testified he told Appellant he was only 16 in a March 29, 2017 text. (Tr. 412). Appellant responded to the age disclosure by texting: "High school, then"; "16 is legal in Ohio"; and "I don't mind the age." (Tr. 404). They met for their second sexual encounter after the text about being 16. (Tr. 409). The juvenile recipient believed they exchanged photographs again after this disclosure, but he also seemed to indicate the state's packet **535** of evidence contained all the photographs he received from Appellant (and the recovered photographs were sent before the disclosure). (Tr. 411, 413).

{¶66} Appellant's sufficiency argument revolves around his contention there was no evidence he was reckless as to the recipient's age of 16 because the recipient testified he initially told Appellant he was 19 years old. (Tr. 391). As the state points out, the victim told Appellant he did not have a driver's license, he was in school, and he lived with his family. (Tr. 396). Notably, Appellant previously spent time with the victim in person when they met for a sexual encounter in late 2016. (Tr. 392). The jury saw a photograph the juvenile sent to Appellant depicting what the juvenile looked like in March 2017, when Appellant sent the juvenile photographs of his penis. (St.Ex. 14); (Tr. 396-399).

{¶67} Circumstantial evidence and direct evidence inherently possess the same probative value, and intent is typically established by circumstantial evidence and inferences as a person's intent rests in their mind. *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). Even if Appellant only sent photographs of his penis before the victim specifically disclosed his true age, a rational juror could find Appellant was reckless in believing the victim was 18 or older when he sent the photographs representing the two counts at issue.

{¶68} Appellant's final sufficiency argument contests the convictions for counts seven through fifteen, which arose from the nude photographs of children found on a hard drive during the

execution of search warrants at Appellant's residence. The pertinent statutory elements of illegal use of a minor in nudity-oriented material are to possess or view any material that shows a minor who is not the person's child or ward in a state of nudity. R.C. 2907.323(A)(3) (unless an exception applies such as artistic, medical, or other proper purpose involving a person with a proper interest in the material or there is written consent of the parent). The mental state is recklessness. *State v. Young*, 37 Ohio St.3d 249, 252, 525 N.E.2d 1363 (1988), paragraph three of syllabus.

{¶69} In *Young*, the Ohio Supreme Court construed the statute as prohibiting the aforementioned nudity only "where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals * * *." *Id.* at 252, 525 N.E.2d 1363, *rev'd on other grounds*, *Osborne v. Ohio*, 495 U.S. 103, 113-114, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (due process issue where jury was not instructed on scienter and qualifying nudity definition under new construction). "By limiting the statute's operation in this manner, the Ohio Supreme Court avoided penalizing persons for viewing or possessing innocuous photographs of naked children." *Osborne*, 495 U.S. at 113-114, 110 S.Ct. 1691 (the state court was permitted to construe the statute in a constitutional manner to avoid a constitutional overbreadth challenge while allowing the statute to remain in full force as construed). The parties agree the trial court's jury instruction properly limited the statute's operation in the manner described by *Young* and *Osborne*.

{¶70} Appellant contends no rational person would find the nine photographs involved a lewd exhibition or a graphic focus on the genitals. Lewd has been generally defined as "sexually unchaste or licentious * * * lascivious * * * inciting to sensual desire or imagination * * *." *State ex rel. Rear Door Bookstore v. Tenth Dist. Ct. of Appeals*, 63 Ohio St.3d 354, 358, 588 N.E.2d 116 (1992), quoting *Webster's Third New International Dictionary* 1301 (1986). According to dictionary.com, the definition of licentious includes: a throwing off of sexual restraint; lewd character or behavior; or wanton disregard or transgression of laws, rules, or moral norms. As for the graphic focus option, it has been concluded (in a case cited by the defense) there can exist a graphic focus on the child's genitals even where the rest of the child's body is in the picture. *State v. Jewell*, 2d Dist. Montgomery No. 16254, 1997 WL 476667 (Aug. 22, 1997).

{¶71} Appellant cites the testimony of the BCI agent who said she found "graphic images appearing to depict underage nudity" on Appellant's hard drive. (Tr. 296). While identifying the photographs

14

for the record, she said the subject of each photograph was a naked juvenile and explained any identifying features in the photograph as follows: male holding a watermelon; female holding globe on top of her head; female; male holding a watermelon; female posing on a beach with a star drawn on her torso; female on a beach with a butterfly painted on her upper chest; female with a palm tree and water painted just above her pubic area; two females, one with a butterfly painted on her chest and one with a palm tree painted above her pubic area; and male holding two pool sticks with a triangle around his neck. (Tr. 298-299). Appellant concludes this was insufficient to establish the contested element.

{¶72} However, the nine photographs were provided for the jury's evaluation during the testimony and deliberations. (Tr. 297); (St.Ex. 9A-I). The witness was not required to supplement the jury's viewing by detailing the positions of the children, explaining how the focus seems to be on their genitals, opining the displays were meant to incite sexual imagination, or asserting they disregarded moral norms.

{¶73} The state reiterates the position espoused during trial. For instance, when responding to motion for acquittal on these charges, the prosecutor argued "there is a focus on the genitals" with "bare penises and testicles exposed, and vaginal areas that the lips are exposed" while noting the lack of pubic hair allowed one to "very graphically see those things." (Tr. 606). In addition, the prosecutor's closing argument to the jury asked, "when you look at these photographs, where do your eyes immediately go? To the exposed vaginas, to the breasts, to the penises sticking out. That is graphic focus on the genitals." (Tr. 736). We find these arguments are valid.

{¶74} The children were prepubescent children but not so young as to expect them to prance around naked on a beach or invite someone to play pool naked. The scenes were staged. Many of the children were posed in positions with techniques (such as the holding of props, lifting of arms, or spreading of limbs) meant to emphasize the genitals or constituting a lewd exhibition due to the arguable intent to incite sexual imagination (among certain viewers) by disregarding moral norms. The body paint applied to some of the female children emphasized their genitals and breasts (such as: a large star between and under the breasts with a face that was smiling and winking with its points/legs spread above the posed pubic area; a butterfly painted over the chest using the nipples as wing decorations with flowers trailing to the pubic area; and a palm tree from the hip to one breast with painted water extending all the way to the top of the upper labial fold).

15

> {¶75} Even if one were to agree that it was a close case for some of the photographs, it cannot be said that no rational juror could find the photographs constituted a lewd exhibition or involved a graphic focus on the genitals. The matter is best addressed as a question of weight of the evidence, which is discussed under the next assignment of error. As a rational juror could find the contested elements of the various crimes proven beyond a reasonable doubt, this assignment of error is overruled.

*State v. Boyd, supra.*

Respondent asserts Ground One is procedurally defaulted as to Counts Two and Three (Return, ECF No. 21, PageID 2535). However, that assertion is insufficiently explained in the Return to allow the Court to adjudicate it.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Cunningham v. Shoop,* 23 F.4th 636, 650 (6th Cir. 2022); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000); *Hendrix v. Palmer*, 893 F.3d 906, 917 (6th Cir. 2018). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

The Seventh District Court of Appeals decided Petitioner's sufficiency of the evidence claims on the merits It is therefore his burden to show that decision was an unreasonable application of the Supreme Court precedent. In attempting to do so, he relies on *United States v. Knox,* 32 F.3d 733 (3d Cir. 1994) and *United States v. Amirault*, 173 F.3d 28 (1st Cir. 1999). Neither of these case are in point. They involve circuit court interpretation of the federal child pornography statutes

in cases where the defendants were prosecuted under those statutes.  This case, in contrast, involves prosecution of Petitioner for violating the relevant Ohio statutes.  The Seventh District interpreted those statues as applying to the evidence in this case and this Court is bound by that interpretation. *Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008), *quoting Bradshaw v. Richey,* 546 U.S. 74, 76 (2005)("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."), *Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005)*; Vroman v. Brigano*, 346 F.3d 598 (6th Cir. 2003); *Caldwell v. Russell*, 181 F.3d 731, 735-36 (6th Cir. 1999); *Duffel v. Dutton,* 785 F.2d 131, 133 (6th Cir. 1986).  Petitioner's citation of the recent Sixth Circuit decision in *United States v. Takits*, 129 F.4th 314 (6th Cir. 2025), is also unavailing because it too involved interpretation of federal child pornography statues, not those of Ohio.

In his appeal to the Ohio Supreme Court on this issue, Petitioner argued "A conviction was upheld for possession of 9 images of nude juveniles that are neither lewd nor focused on the genitalia which is counter this court's ruling in *State v Young 1988."*(Memorandum in Support of Jurisdiction, State Court Record, ECF No. 20, Ex. 68, PageID 662).  Petitioner gives no citation for *Young*, but the referenced decision appears to be *State v. Young*, 37 Ohio St. 2d 239 (1988).  In that case the Ohio Supreme Court held, in an opinion for a unanimous court written by Justice Andy Douglas, that

> child pornography statute was neither overbroad nor constitutionally vague; (2) recklessness was culpable mental state required to constitute violation of statute; (3) omission of element of recklessness from either jury instructions or indictment was not fatal; (4) Statute's "proper purposes" exceptions were in nature of affirmative defenses to be proven by defendants; (5) sentencing provisions of statute did not constitute cruel and unusual punishment; and (6) probable cause existed for issuance of warrants to search both defendants' residences.

The Court fails to see how *Young* supports Petitioner's position.

The Seventh District's rejection of Petitioner's insufficiency of the evidence claims is neither contrary to nor an objectively unreasonable application of relevant Supreme Court precedent.  Petitioner's First Ground for Relief should be dismissed with prejudice.

**Ground Four:  Prejudicial Joinder**

In his Fourth Ground for Relief, Petitioner asserts that joinder of charges involving different victims deprived him of his Due Process rights under the Fourteenth Amendment.

Respondent asserts this claim is procedurally defaulted because it was not raised on direct appeal.  Petitioner responds that he can show excusing cause and prejudice in that he was represented by counsel on direct appeal and omission of this claim constituted ineffective assistance of appellate counsel.

Petitioner denies he failed to present this claim on direct appeal, asserting

> Herein, in the Petitioner's appeal to the Ohio Court of Appeals, he raised the failure to sever, as raised herein. The Court of Appeals denied the claim claiming the case was simple and direct, without ever analyzing the prejudicial effect upon trial as required by law, after but a paragraph of discussion as to each sub-argument. Such short shrift on a potentially meritorious issue cannot claimed to be meaningful appellate review.

(Reply, ECF No. 28, PageID 2662).  Petitioner gives no record reference to where he allegedly raised the failure to sever; his Assignments of Error on direct appeal were:

> Assignment of Error I: The Trial Court Erred by Overruling Appellant's Motion to Suppress
>
> Assignment of Error II: Appellant's Convictions Were Unsupported by Sufficient Evidence
>
> Assignment of Error III: Appellant's Convictions Were Against the Manifest Weight of the Evidence

Assignment of Error IV: Appellant's Sentence is Contrary to Law

Assignment of Error V: Appellant's Counsel Was Ineffective

(Appellant's Brief, State Court Record, ECF No. 20, Ex. 61, PageID 447).  Improper joinder of offenses for trial does not appear among these Assignments of Error.

Petitioner eventually raised this claim as an assignment of error omitted by appellate counsel as the result of that attorney's ineffective assistance.  Ineffective assistance of appellate counsel can act as excusing cause for failure to raise an issue on direct appeal, but only if the ineffective assistance of appellate counsel claim is properly presented to the state courts.  *Edwards v. Carpenter*, 529 U.S. 446 (2000); *Chase v. MaCauley*, 971 F.3d 582, 592 (6th Cir. 2020); *Scuba v. Brigano*, 527 F.3d 479, 488 (6th Cir. 2007).  Boyd filed an Application to Reopen his Direct Appeal under Ohio R. App. P. 26(B) in which he raised the failure to sever claim as an improperly omitted assignment of error (State Court Record, ECF No. 20-1, Ex. 111, PageID 1219).

The Seventh District denied Petitioner's 26(B) Application on the merits, finding it was not deficient performance under *Strickland v. Washington,* 466 U.S. 668 (1984), to fail to raise this assignment of error because the evidence was "simple and direct."  (Opinion, State Court Record, ECF No. 20-1, Ex. 15, PageID 1350-51).  This merits decision on Ground Four is entitled to deference unless Petitioner can show it was an objectively unreasonable application of *Strickland*. *Harrington v. Richter*, 562 U.S. 86 (2011).  Petitioner has failed to show that denial of this claim was objectively unreasonable.  Appellate counsel must choose among possible assignments of error and the joinder issue was not a "dead bang winner."

Petitioner's Fourth Ground for Relief should be dismissed as procedurally defaulted because Petitioner has not shown excusing cause and prejudice.

**Ground Five:  Denial of Speedy Trial**

In his Fifth Ground for Relief, Petitioner asserts he was denied his constitutional right to a speedy trial.  Respondent asserts this claim is procedurally defaulted because it was not raised on direct appeal.

In his Reply Petitioner asserts his speedy trial rights were violated because he was not tried within 115 days on the misdemeanor counts under Ohio Revised Code § 2945.71 which sets a limit of 115 days for misdemeanor trials.  He further asserts that statute essentially sets a constitutional limit for felony trials which was exceeded (Reply, ECF No. 28, PageID 2662-63).

This claim was never raised on direct appeal.  Petitioner asserted in his 26(B) Application that it was ineffective assistance of appellate counsel for his appellate attorney to fail to do so and in his Petition for Post-Conviction Relief that it was ineffective assistance of trial counsel for his trial attorney to fail to do so.

The Seventh District's opinion, quoted at length in the Return of Writ, explains in detail why there is no merit to this claim (Return, ECF No. 21, PageID 2563-66, quoting *Boyd*, 2023-Ohio-4725, ¶¶100-111).  Petitioner has failed to show that this decision is an objectively unreasonable application of *Strickland*.  Therefore Ground Five is procedurally defaulted without excusing cause and should be dismissed.

**Ground Six:  Prosecutorial Misconduct**

In his Sixth Ground for Relief, Petitioner asserts his trial was rendered constitutionally unfair by prosecutorial misconduct.  In part he alleges the prosecutor misstated the law, but the

law relies on is the federal statutory law discussed in the federal appellate cases cited, not Ohio law. See pp.16-17 *supra*. When Petitioner raised this claim in his petition for post-conviction relief, the court in a lengthy discussion found it barred by *res judicata* because it was not raised on direct appeal although it could have been. *Boyd*, 2023-Ohio-4725, ¶¶27-53. His attempt to raise it as an omitted assignment of error on direct appeal was also rejected by the Seventh District and Petitioner has failed to show this was an objectively unreasonable application of *Strickland*. Ohio's doctrine of *res judicata* in criminal cases, enunciated in *State v. Perry,* 10 Ohio St. 2d 175 (1967), is an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Petitioner's prosecutorial misconduct claim should be dismissed as procedurally defaulted.


**Ground Seven:  Ineffective Assistance of Trial Counsel**


Petitioner asserts his trial attorney failed to provide effective assistance of counsel as required by the Sixth Amendment. Counsel's alleged deficient performance consists in (1) failing to call an expert on bi-polar disorder, (2) failing to call as witnesses Josh Hensley or Royce Craft.

As to the bi-polar expert, the Seventh District found that it was not error for the trial judge to fail to hold an evidentiary hearing on Petitioner's petition for post-conviction relief because there was in the record a letter from the proposed expert, submitted in support of a request for funds, which enabled a proper determination of whether an evidentiary hearing was needed. The

Seventh District cited in-point Ohio Supreme Court authority on that point. It noted that the expert's letter was in the appellate record and the issue therefore could have been raised on direct appeal. *Boyd*, 2023-Ohio-4725, ¶¶10-111. It also explained at length why it was not ineffective assistance of trial counsel to fail to call the two call the two eyewitnesses. *Id.* Petitioner has not shown how this very thorough opinion is an unreasonable application of *Strickland*. Ground Seven should be dismissed as barred by *res judicata*.

**Ground Eight: Trial on Facts Different from Those Presented to the Grand Jury**

In his Eighth Ground for Relief, Petitioner asserts the State violated his Fifth Amendment rights by putting him on trial with facts different from those presented to the grand jury. In his Reply, Petitioner seems to be asserting that he is entitled to the grand jury testimony of two witnesses and Sergeant Hillman under the Jencks Act.

The Court of Appeals found that Petitioner had not demonstrated an abuse of discretion in the trial court's refusal to disclose grand jury testimony. Abuse of discretion is the correct standard for review of such a refusal. This Court cannot reexamine a state court decision for abuse of discretion. *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995). Moreover, there is no federal constitutional right to indictment by a grand jury. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,* 408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh,* 420 U.S. 103 (1975); *Williams v. Haviland*, 467 F.3d 527 (6th Cir. 2006)(*Apprendi* does not change this result).

Ground Eight should therefore be dismissed for failure to state a claim upon which habeas corpus relief can be granted.

**Ground Nine: A Mahoning County Judge violated Petitioners Fifth and Fourteenth Amendment by executing a search warrant in California, outside of their jurisdiction.**

In his Ninth Ground for Relief, Petitioner asserts the Mahoning County judge who issued the relevant search warrants in this case did so without jurisdiction.

In affirming denial of Petitioner's petition for post-conviction relief, the Seventh District noted that the issue could have been raised on direct appeal because the relevant documents were of record. *State v. Boyd,* 2023-Ohio-4725, ¶¶61-69. Because it was not raised, it was procedurally defaulted by reason of *res judicata*. *Id.* Petitioner makes no response to that argument.

Moreover, Respondent points out that under both the Federal Stored Communications Act and California law, the search warrant was properly signed and then executed[3]. The Court takes judicial notice, *sua sponte*, that the Mahoning County Court of Common Pleas is a court of general criminal jurisdiction, supporting the decision of the Seventh District.

Ground Nine should be dismissed as procedurally defaulted and without merit.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not

---

[3] Petitioner uses the word "executed" to mean "signed." Normal legal usage would be to refer to the signing of a warrant as "issuing" it and execution would mean carrying out the command of the warrant. The Seventh District points out this distinction in its opinion.

be permitted to proceed *in forma pauperis*.


December 8, 2025.

s/ *Michael R. Merz*
United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.